I'll begin with the vagueness issues in this case, which affect all of the charges and all of the convictions. At the outset, I think it's important to set forth the fundamental principles governing this court's vagueness analysis, principles that have been clarified recently by the Supreme Court. In Johnson, in 2015, the Supreme Court ruled that the Supreme Court ruled in 2015 and Davis in 2019. First, there are three distinct bases for the void for vagueness doctrine under the due process clause when a federal as opposed to a state statute is being challenged. First, the need to provide fair notice to ordinary persons. Second, to prevent arbitrariness by police and prosecutors and judges and juries. And third, and this one does not apply to state statutes, it only applies to federal statutes, third, the need to make sure that the separation of powers doctrine is respected by a court. All three matter. Fair notice has traditionally gotten the most attention, but after Davis, the court said, the majority in Davis said that separation of powers is a twin pillar of fair notice. And previously, the court said that the need to avoid arbitrariness was an equal consideration to fairness. It's also important not to mix the First Amendment vagueness case law, which is not at issue in this case, with the due process case law. Second, a court must apply a significantly more demanding vagueness analysis to a criminal statute, especially one like these that resulted in felony convictions in terms of imprisonment, much more so than a civil statute or an administrative regulation. Third, a criminal statute is void for vagueness if it lacks, quote, any ascertainable standard for inclusion or exclusion for conduct within its scope or, put another way, lacks a core meaning. That's the language of the federal agency or the Department of Justice has to say about it and not what's in the legislative history. The plain, unadorned language of the statute is what matters. Fourth, there's a qualitative difference between a merely ambiguous statute and an outright vague statute. If it is a vague statute, then none of the tools of statutory interpretation can be used. Legislative history is irrelevant. What an agency says is irrelevant. To use Justice Gorsuch's words for the majority in Davis, it is a nullity. It is void ob initio. It was stillborn. It never came out of Congress, and that's how the court needs to treat these three statutes. Fifth, in deciding whether a criminal statute's language puts a particular defendant on fair notice, a court needs to apply an objective standard, an ordinary person, reasonable person standard, not a subjective standard that looks to a particular defendant's knowledge or training or the particular circumstances of a case, at least when, as I am doing, challenging statutes for lacking a core meaning or lacking any standard that distinguishes what's within and without the statute. Sixth, whether a criminal statute may clearly prescribe some types of conduct does not mean that it is not vague. Justice Scalia's opinion in Johnson made this very clear. The key is, does the statute have a core meaning? Does the statute have an ascertainable standard for inclusion or exclusion? Seventh, a criminal statute's scienter provision does not matter, does not save it from being vague if it lacks a core meaning or lacks the type of ascertainable standard for inclusion or exclusion that I talked about. And finally, desuetude in the enforcement of a criminal statute is the hallmark of arbitrariness, one of the three distinct bases for the void-for-vagueness doctrine. Now, applying these fundamental principles to the statutes at issue in this case, one, the honest services statute, two, the provision of the Commodity Exchange Act that prohibits fictitious sales and the reporting of things, prices that are not true and bona fide, and then third, the combination of the Commodities Exchange Act and the administrative regulation promulgated by the Commodities Futures Trading Commission, Section 180.1, which all underlie the insider trading charges. All of those provisions fail under the void-for-vagueness doctrine I have just articulated based upon Supreme Court decisions that have been clarified in 2015 and 2019. I'll start with the honest services statute. The Supreme Court's 2019 decision in Davis made it very clear that a vague law is no law at all. It is void of initio. And a federal court cannot and should not interpret that statute to say that it should strike it down and — So what do we do with skilling? Skilling is inconsistent with Davis. It's not just inconsistent. It's undermined. All right. But that's an argument for the Supreme Court, not for us. Well, I respectfully disagree. The Supreme Court has said when a subsequent precedent casts some doubt on a prior precedent, you leave it up to the court. Here's what skilling said. When you're faced — first of all, they never addressed whether it was a vague statute. They intentionally avoided that under the constitutional avoidance doctrine. Davis requires the court to first, as a threshold matter, address whether a statute is vague. The constitutional avoidance doctrine cannot be applied anymore to a vague statute after Davis. That's putting the cart before the horse. If a statute — Right. You're arguing that skilling is inconsistent with later case law in terms of its reasoning. But skilling remains a precedent of the Supreme Court. It remains to be cited by the Supreme Court. How can we ignore it? It was cited in Prococo. Right. But no one argued that it was undermined by Davis and under the well-established rule that a court does not address a constitutional issue unnecessarily. If you look at the briefs in Prococo, no one mentions Davis. No one makes this argument. There is no way to read Davis except if a statute — But the point is the Supreme Court's treating it as a precedent of its court. How can we, as an inferior court, not do the same? The court was never presented with the question I'm asking you to decide. But we, our court in 23, relied on skilling's interpretation of honest services. The court was not presented with the argument I am making. This is an issue of first impression. Davis says if a statute is vague, it never was a constitutional statute. Right. You're essentially saying skilling treated the vagueness argument in one way. Davis treats a vagueness argument in a different way. But the point is skilling addressed the vagueness argument. It just addressed it in a way that you don't like. Well, Davis said it would violate the separation of powers doctrine to interpret a vague statute to try to save it using the constitutional avoidance doctrine. Davis said that. That's exactly what skilling did. So to rely upon skilling would itself violate the separation of powers. Let me ask it this way. Is there any federal court in any jurisdiction that has held that skilling is overruled? No, but I've not found one that's been presented with this argument, and I've looked. I think this is an issue of first impression in any court. But I repeat, you've got to look at what a five-member justice majority opinion said, that it would violate the separation of powers doctrine to apply the constitutional avoidance doctrine to a vague statute. The key in skilling is they did not address whether it was vague. Justice Scalia did, and subsequently Justice Gorsuch has said it's vague. But the majority in skilling never addressed it. They intentionally avoided it under a doctrine that is violating the separation of powers doctrine. I want to now turn to the Commodities Exchange Act provisions. So we have two different provisions at issue. One is a portion that criminalizes fictitious sales and failing to report a price that is not true and bona fide. The statute defines neither provision, unlike some of the other provisions that are defined. It is not disputed that no one since 19—first of all, the statute has been on the books since the mid-1930s, since the New Deal. The government does not dispute that no one has been prosecuted, no one has been prosecuted criminally for the fictitious price provision since 1978. And in that case, a federal district judge struck that statute down as vague. The government never appealed it. The government has never prosecuted anybody except Mr. Clark and his co-defendants in 2022 for this. That's dissuadu. That is the classic example of that. The other provision, to my knowledge, and the government doesn't dispute me, has never been the basis since the 1930s for a criminal prosecution. The terms fictitious sale and true and bona fide price, they're not defined in the statute. They're not defined in the common law. There is no common sense meaning. There is no industry meaning that is longstanding. The only meaning is what the Commodities Futures Trading Commission has said about it in administrative decisions and on their glossary on their website. It's not even in a CFR provision. The government says that gives meaning to it. I disagree that the Supreme Court has made it clear you don't define any statute, criminal or civil, but especially not a criminal statute, by what an executive branch agency says about it. And, moreover, the government's reliance on dictionary definitions, as my reply brief shows, that only makes things more confusing. The words fictitious and the word true and bona fide completely go in the opposite directions in the definitions. That's not resolving anything. Moreover, even if you go with the definition adopted by the Commodities Futures Trading Commission in Ray Collins' case, which is what's been cited again and again and again since the 80s, one of the leading commentators, Professor Markham, who has written the lengthy treatise, the leading treatise in this area, cited by the government in their brief as well as in my brief, says that is a, quote, completely unintelligible standard that invites arbitrary enforcement. I cite that in my reply brief on page 15. The government also cites legislative history, which shouldn't be relevant, but let's assume it is. They cite two floor statements of individual senators in the 1930s. That, even if legislative history could be considered, that's not the kind of legislative history that is going to save a vague statute. My final vagueness challenge is to the combination of the statutory and regulatory provisions supporting the insider trading charges in this case. They are vague in view of all three of the reasons that underlie the void for vagueness doctrine. First, definitely at the time of the alleged offenses and still today, the provisions do not give an ordinary person fair warning of criminal liability. Two, they encourage arbitrary enforcement. This statute has been on the books since 2010. The government acknowledges this is the first case they have ever brought criminal charges against somebody for insider trading in the commodities context as opposed to the securities context. And third, the relevant provision in the statute that Congress passed doesn't say anything about insider trading by an employee of a brokerage. It specifically addresses insider trading by government officials. It addresses insider trading by commodities exchange employees and people who get information from those classes. It says zero about brokerage employees like Mr. Clark. I'm not brokerage employees. Sorry, trading companies, Mr. Clark, or brokerage companies. You have to peel layer after layer after layer to get to the legal basis for the government's theory of prosecution here. It's not in the statute. It's not even expressly in Section 180.1. It is in the Commodities Futures Trading Commission's interpretation after having publicly said repeatedly for many years, we're not even sure how insider trading works in the commodities versus the securities context. This cannot be fair notice. It's delegating to an administrative agency to fill in the gaps in a criminal statute. And it is something that is encouraged arbitrariness. Regarding my different challenges to the Commodities Exchange Act and the CFTC's regulations, the government says, well, but Mr. Clark was sophisticated. He worked in this area for many years, and he was specifically trained on the CTFC and commodity exchanges rules. The problem with that argument is it ignores the objective standard that this court applies. This is not a subjective standard. This is an objective standard. The government also says, well, but this was an economic provision, and courts should give a more generous view towards economic regulations. That's true if it's civil. It's not true if it's criminal. These are serious felony charges that resulted in a lengthy prison sentence. I would frame a statute that would reach this conduct. I'm sorry, Your Honor. If the legislature or the Congress were to abide to this fact pattern, how would they frame it to be constitutional under your argument? They would have added another provision to the express insider trading provisions of the statute they enacted as part of Dodd-Frank that would say this also includes employees of trading houses and brokerage firms and the like. Instead of requiring you to dig three layers down in a not even something in the CFR, but nothing in the CFR that expressly uses the words insider trading. Okay, Mr. Newton. We'll see you back on rebuttal. Thank you. I appreciate it. Ms. Grodin, welcome. Good afternoon. Good afternoon, and may it please the Court. My name is Claire Grodin on behalf of the United States. Much of this afternoon's conversation has focused on Mr. Clark's vagueness challenges, so that's where I'll begin my discussion today. Before I dig into explaining why each of the provisions Mr. Clark challenges is not vague, it's worth taking a step back to note the strange nature of this appeal. Mr. Clark's arguments in the briefing and a little bit today sound like a backdoor attempt to argue that the statutes he admitted violating do not actually apply to his conduct, but he is raising a facial vagueness challenge, and in doing so, he shoulders a much more demanding burden. To invalidate a statute as facially vague, he must demonstrate not only that the law is vague as applied to him, but also that it is impermissibly vague in nearly every application. And Mr. Clark is particularly ill-suited to bring this facial challenge, because he has admitted that his conduct falls within the statutes at issue, and that he knew he was violating the law at the time. That's at ROA 557, the plea agreement. None of the laws that Mr. Clark challenges here is vague. First, Mr. Clark's argument that the Honest Services Fraud Statute is vague is squarely foreclosed by the Supreme Court's decision in Skilling, which held that Section 1346 is, quote, not unconstitutionally vague. That's Penn site 412. My colleague makes arguments that the basic principles of vagueness doctrine have been undermined by the Supreme Court's recent decisions in Johnson and Davis. I think that's clearly not true. It's mixing up two distinct principles of the vagueness doctrine. The first principle is who can bring a facial challenge to a statute, and that has long been settled in the Supreme Court and in the Fifth Circuit. The statute must be vague as applied to the challenger for the challenger to bring a facial challenge. This court has endorsed that reading, most recently in Westbrooks and in Thomas. Johnson does not undermine that principle. The second principle that Johnson does speak to is what makes a statute facially vague. And Johnson says, well, it might be the case that a statute doesn't have to be vague in every single application. A few clear corner cases of application of the statute won't save it from vagueness. Those are two distinct principles. And here the important principle is that the statute clearly applies to Mr. Clark's conduct. So moving on to the Commodity Exchange Act provisions, Section 60A prescribes fictitious sales, which are sales that look like legitimate arm's-length sales, but are really designed to negate market risk and price competition. That meaning comes from ordinary tools of statutory interpretation. We look at dictionaries, as the Supreme Court tells us that we're allowed to in the context of vagueness challenges. Rose v. Locke, Williams will tell us that. And it comes from looking at the neighboring terms in the provision, wash sales and accommodation trading, both terms known in the industry that describe types, very specific types of trades that are real, they are executed on the market, but they negate market risk and price competition. Can we talk a little bit about the facts of this case in particular and why they fall within the fictitious sale? Do I understand correctly that it's essentially that rather than going to the market to purchase securities for the client, they found a seller with specific shares and therefore did not get the client the best price? Is that essentially the theory? So the theory here, and I'm happy to dig even more into this, the theory here is that Mr. Clark conspired with his broker, the same one he was receiving kickbacks from, to pre-select the counterparty for each of Mr. Clark's employers. Right. In other words, normally you're supposed to go to the market and get the lowest price for the buyer possible, and they didn't do that. That's right, exactly. And it might be helpful here to think about what a normal block trade looks like, which I found helpful to learn about when I was thinking about this conduct here. So in a normal block trade, what happens is an institutional trader that wants to engage in a block trade will call up their broker, state the terms that they're looking for, and then the broker will shop around that block trade to the broker's client book, find a good counterparty who's willing to engage, they'll negotiate the terms, they'll execute the block trade, and then report it on the open market. Now usually when the broker is shopping out that block trade, he's doing so anonymously. The other clients don't know whose block trade that is, because the mere knowledge of the identity of that institutional trader is enough to potentially move the market. So let's look back to what happened here. Mr. Clark would call up Mr. Webb, the broker, and then Mr. Webb would take every single one of those block trades not to his client book, but exclusively to Peter Miller, their preselected counterparty, a trader based in Puerto Rico. And when Miller received that call, he knew that those trades were coming from Company B, and he knew that those trades were his. He knew that Company B was a captive counterparty to those block trades. He had carte blanche to name the terms that he wanted and to make corresponding trades on the related markets to ensure that he could make a profit, which he would then split with Mr. Clark secretly. In other words, there's the idea that he could charge a higher rate than the market might otherwise bear.  So as I was saying, our understanding of fictitious sales is derived from ordinary terms of statutory interpretation, and that is how the CFTC and federal courts have interpreted the statute for nearly 40 years. Now, I understand my colleague was saying that, of course, the court can't defer to the CFTC's interpretation of fictitious sale, and we are not asking for deference to an agency interpretation here. But we do think that it's relevant that for the past 40 years, the CFTC and federal courts have consistently interpreted the statute in the same way that I'm advocating here today. That means that the market was on notice that if you engage in a transaction that appears legitimate but is in fact designed to negate market risk and price competition, you are at risk of at least civil enforcement under the fictitious sale provision. You are on notice that that action is unlawful. I mean, aren't we simply just talking about fraud about price? I realize it comes with a lot of interesting baggage, but at bottom, the government's theory is there was fraud about the price. Fraud about the price. Well, we don't believe that we have to prove that the price itself was outside of some sort of reasonable range. What the statute is aiming at here— I guess what I meant just to supply, I'm just saying there's a representation, at least implicit and not explicit, that I will get you the best price possible, and in fact that wasn't done. There's a representation that Mr. Clark would represent his company's interests fairly in these trades and that he actually wasn't. One way to look at it is that Mr. Clark was on both sides of the deal. He was pretending to represent Company B, but in fact taking a cut of the counterparty's profits. So I'll turn now to Section 9-1, the insider trading provision, unless there are further questions on fictitious sales. So Congress borrowed the language of Securities Exchange Act Section 10-B in enacting Section 9-1 in the Commodity Exchange Act, and in doing so, it carried with it that law's old soil of nearly a century of judicial interpretations as well as the common law of fraud and deceit. Under the Supreme Court's decision in O'Hagan, courts have interpreted Section 10-B to prohibit the misappropriation of inside information in violation of a duty of loyalty to the source of that information. O'Hagan is on all fours with Mr. Clark's conduct here. He misappropriated his employer's information to benefit himself in violation of his duty of loyalty to his company, Company B. So if the Court has no further questions, the government asks the Court to affirm. And for the reasons stated here and in our brief, thank you. Thank you, Ms. Grodin. We appreciate it. Mr. Newton, you have five more minutes. Thank you. I want to begin with Judge Ho's question. The record does not reflect that there was any price fraud. The record reflects that there were kickbacks. There were payments from Mr. Clark for steering business to that brokerage, but there's nothing in the factual stipulations in the plea agreement which say this was price fraud, this was a kickback. So I disagree with any position the government may be taking that there was price fraud as opposed to not reporting any other definition. I'll just look at record at 556. Defendant understands that the trades were not offered to the market but were instead offered to predetermined counterparties. Well, that's correct of any block trade, Your Honor. Block trades are off the market. They're outside the pit. They're intentionally outside the pit. Block trades are not in the pit. That's the whole point. But they're not predetermined counterparties. No, but there is no proof that the price negotiation that went into this was in any way cheating the company of money as opposed to the market. I think I'm looking at the plea. I don't know if there was evidence, but it was pled. But pled that he did it outside of the normal market forces, but a block trade is outside of the normal market forces. That's the whole definition of a block trade. It's in my brief at some place. Why did he plead to unlawful prearranged trades? Because he, according to the Commodities Futures Trading Commission, engaged in what they define as a fictitious trade. But it's not. It's against the plain language of fictitious to begin with, and it's simply not. It's a theory that doesn't make any sense in the block trading world. But the point is he was trained on the Commodities Futures Trading Commission administrative proceedings. It doesn't matter because this is an objective standard. But the question of void for vagueness and non-delegation, the definition is not. It's vague. It doesn't have any kind of common sense meaning. It's buried in what some administrative agency says it means in a nonsensical way. Now, to the extent the government is saying, well, you're challenging the sufficiency of the evidence. No, I'm not. I'm simply pointing out that this doesn't make any sense. It's all part of my vagueness challenge. It cuts against the core definition of it or the dictionary definition of it. It cuts against the common sense definition of it. It's simply a vague statute. What's the relevance of the defendant's conduct and relevant conduct as to the suggestion that there's no criminality attached to this? And if I engaged in surreptitious trades, he hands it off to relatives. He hides. He hides. He ducks. He's not performing. He's violating his own internal policies within the rules themselves. Is that irrelevant when you ask the question of void for vagueness as to this conduct? It is irrelevant under an objective standard. He was trained on administrative and commodities rules. There was nothing about the criminal law that he was trained on. It was briefly mentioned in 2018 after the dates that he was convicted of in this case. Did he engage in that kind of behavior? Absolutely. Is it relevant to your void for vagueness and delegation doctrine analysis? No. It's an objective standard. The court said that again and again and again. It's an ordinary person. It's not a sophisticated commodities trader who was trained on something at his company trainings. So you disagree with the theory that it has to be vague as applied to your client? Absolutely. The Supreme Court necessarily, and Johnson and Davis, were not concerned with what any individual may have done in their particular case. They were concerned with whether the statute had a core meaning, had a readily ascertainable standard for exclusion and inclusion. That's the only question to be asked. Imagine a statute that says you can't commit falsity about price. Would that be void for vagueness? Yes, because falsity about price doesn't have a core common law meaning. It doesn't have a meaning that Congress—Congress gives definitions to these other terms. That's also very important. They give definition to other terms in the statute. They don't give— What's vague about a false representation about price? In what way false? In what way? It's—we are talking about congressional language that has to be—Davis. Davis said it needs to clearly prescribe. How can this to an ordinary person clearly prescribe? It doesn't. What about perjury? Perjury has a common law meaning. But fictitious price does not go back to the founding of our country. True and bona fide price do not go back to the founding of our country, and honest services do not go back to the founding of our country. These are novel 20th century New Deal terms. Feeding does. I'm sorry? Feeding does. That's not language in the statute. I know it's not the right word, but all right. Thank you. Thank you very much. The case is submitted. We appreciate your arguments today.